# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | |
|---|---|
| NAACP VIRGINIA STATE CONFERENCE,<br><br>       Plaintiff,<br><br>    v.<br><br>JOHN O'BANNON, ROSALYN R. DANCE, GEORGIA ALVIS-LONG, CHRISTOPHER STOLLE, J. CHAPMAN PETERSEN in their official capacities as members of the Virginia State Board of Elections, STEVE KOSKI, in his official capacity as Virginia Commissioner of Elections; CAROLINE EMMONS, DOROTHY JAECKLE, LYNETTE CLEMENTS, in their official capacities as members of the Chesterfield County Electoral Board, MISSY VERA, in her official capacity as General Registrar and Director of Elections of Chesterfield County; SANDRA PRICE STROBLE, JANE GRANT BURNER, RAMONA SANDERS, in their official capacities as members of the City of Harrisonburg Electoral Board, MARK FINKS, in his official capacity as General Registrar and Director of Elections of the City of Harrisonburg; ATOY B. CARRINGTON, MICHAEL J. KHANDELWAL, H. MICHAEL ZIEGENFUSS, in their official capacities as members of the City of Norfolk Electoral Board, STEPHANIE ILES, in her official capacity as Director of Elections and General Registrar of the City of Norfolk; C. STARLET STEVENS, BILL PANTELE, and JOYCE K. SMITH in their official capacities as members of the City of Richmond Electoral Board; and DAVID LEVINE, in his official capacity as the General Registrar and Director of Elections of the City of Richmond,<br><br>       Defendants. | **Civil Action No.: 25-1937**<br><br>**AMENDED COMPLAINT** |

## COMPLAINT

Plaintiff NAACP Virginia State Conference brings this action against Steve Koski, in his official capacity as Virginia Commissioner of Elections; the Virginia State Board of Elections Members, in their official capacities (collectively the "State Board Defendants," and with Defendant Koski, the "State Defendants"); and the registrars and members of the boards of elections in Chesterfield County and the cities of Harrisonburg, Norfolk and Richmond, in their official capacities (collectively, the "Local Defendants"), and alleges the following:

## PRELIMINARY STATEMENT

1.     The right to vote is fundamental and foundational to American democracy.  Every eligible citizen of voting age residing in Virginia has the right to vote.  On too many college and university campuses in Virginia, however, the right to vote requires that a student jump through hoops such as providing a college dormitory name, a dorm room, a campus mailing address, and/or mail box number, none of which has any relevance to the student's eligibility to vote, none of which is asked for or even referenced on Virginia's voter registration application, none of which serves any material purpose in the voter registration process, and none of which is sought uniformly in all jurisdictions in the Commonwealth.

2.     This lawsuit seeks declaratory and injunctive relief to stop Defendants from unlawfully rejecting voter registration applications and same day registration provisional ballots completed by otherwise eligible college students who provide a valid campus address but not a dormitory name, dorm room, campus mailing address, and/or mail box number.  An application cannot be denied because a student residing on a Virginia campus does not include that information in addition to an otherwise valid campus address.

3.      Defendants' actions—including the rejection of innumerable voter registration applications completed by students who live on campus at James Madison University, Norfolk State University, Old Dominion University, University of Richmond, Virginia Commonwealth University, and Virginia State University—including in the weeks before the November 4, 2025 general election—violate the Materiality Provision of the Civil Rights Act of 1964, 52 U.S.C. § 10101(2)(B), and the First and Fourteenth Amendments to the U.S. Constitution.  And Defendants' actions—because they differ from how other local jurisdictions in Virginia treat similar applications—violate the Different Standards, Practices, or Procedures Provision of the Civil Rights Act of 1964, 52 U.S.C. § 10101(2)(A), and the Fourteenth Amendments to the U.S. Constitution.

4.      Defendants are rejecting voter registration applications submitted by qualified applicants living on university campuses based on the arbitrary requirement that students furnish information that is immaterial to their eligibility to vote, like their dormitory name, dorm room, campus mailing address, and/or mail box number. The Virginia Administrative Code (VAC) provides, for example, that "no person shall be denied registration for failure to submit a mailing address."  1 VAC 20-40-30(C).  Moreover, a dorm name or room number is neither requested on Virginia voter registration applications nor necessary to establish an applicant's residency when the applicant already has provided a valid campus address.  And such information has not been required of college students in other Virginia jurisdictions.

5.      Unless the Court grants the relief requested herein, Defendants will continue to reject registration applications submitted by voters living on campus for not including a dormitory name, dorm room, campus mailing address, and/or mail box number.  Defendants will also

3

continue to reject provisional ballots cast by students whose same day voter registration applications lack one or more of these pieces of information.

**JURISDICTION AND VENUE**

6.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because this action arises under the United States Constitution and laws of the United States; under 28 U.S.C. §§ 1343(a)(3)-(4) and 1357 because this action seeks equitable and other relief pursuant to an act of Congress providing for the protection of the right to vote; and under 42 U.S.C. §§ 1983 and 1988 because this action seeks to enforce rights and privileges secured by the United States Constitution and laws of the United States.

7.     This Court has authority to issue declaratory and injunctive relief in this action under 28 U.S.C. §§ 2201 and 2202.

8.     This Court has personal jurisdiction over the Defendants, who are sued in their official capacities only.

9.     Venue is proper in the United States District Court for the Eastern District of Virginia under 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2), because a substantial part of the events that gave rise to Plaintiff's claims occurred in this district, and under Local Civil Rule 3(C), because this action was properly commenced in this division.

**PARTIES**

10.     Plaintiff NAACP Virginia State Conference is the statewide unit of the NAACP in Virginia.  The NAACP is the nation's largest and one of the oldest civil rights grassroots organizations.  The NAACP Virginia State Conference is a non-profit, non-partisan organization that works to achieve equity, political rights, and social inclusion by advancing policies and practices that expand human and civil rights, eliminate discrimination, and accelerate the well-

being, education, and economic security of Black people and all persons of color. The NAACP Virginia State Conference has thousands of members who live in Virginia, including students at colleges and universities throughout the commonwealth, including members who are students at: Norfolk State University, Virginia State University, Old Dominion University, University of Richmond, James Madison University, and Virginia Commonwealth University. The NAACP Virginia State Conference brings this action on behalf of its members who are attending and will attend: Norfolk State University, Virginia State University, James Madison University, Old Dominion University, University of Richmond, and Virginia Commonwealth University.

11.     The NAACP Virginia State Conference's active college chapters include: NAACP James Madison University; NAACP Norfolk State University; NAACP Virginia State University; NAACP Old Dominion University Chapter; NAACP University of Richmond; and NAACP Virginia Commonwealth University Chapter (collectively "NAACP College Chapters").

12.     The NAACP Virginia State Conference advocates for the voting rights of Black people in Virginia. The NAACP Virginia State Conference registers voters throughout the commonwealth each election cycle. The NAACP Virginia State Conference also engages in get out the vote efforts, including by educating Black voters in Virginia on different methods of voting, providing educational guides on local candidates to increase voter engagement, eliminating barriers to the ballot box, and assisting voters who experience challenges when they attempt to register and/or vote.

13.     The NAACP Virginia State Conference also works with and advocates for the voting rights and electoral participation of the African American community throughout the Commonwealth of Virginia. The NAACP Virginia State Conference works closely with a network of key activists and leaders from the African American community who help shape NAACP the

Virginia State Conference's agenda and play a critical role in implementing the NAACP Virginia State Conference's programs. The NAACP Virginia State Conference thus serves a crucial role in providing a vehicle through which NAACP Virginia State Conference's constituents express their collective views and protect their collective interests.

14.    Each NAACP College Chapter has engaged in voter registration efforts this election cycle.  More generally, the NAACP has registered voters, including many college students, in the cities of Richmond, Harrisonburg, and Norfolk, and in Chesterfield County.

15.    Upon information and belief, Defendants' unlawful rejection practices have and will continue to result in the rejection of voter registration applications completed by individuals registered by the NAACP Virginia State Conference, as well as by applicants who are NAACP members.  The registration requirements challenged here also interfere with the NAACP Virginia State Conference's ability to carry out its mission of increasing voter turnout and participation. Defendants' unlawful rejection practices have thwarted the NAACP Virginia State Conference's existing voter registration and turnout program, and are causing the NAACP Virginia State Conference to divert resources in this and future elections from its existing voter registration, education, and mobilization efforts towards educating student voters who live on campus about what information is necessary to successfully register, to ensure that those student voters living on campus whose registrations have been denied submit registration applications that will be accepted, including through same-day voter registration.  And, as a result of Defendants' unlawful rejection practices, this past election cycle, the NAACP Virginia State Conference:  (1) coordinated with individual college leadership about specific actions to address unlawful student-voter guidance and potential registration denial; (2) developed and disseminated a public service announcement for college radio stations regarding the unlawful student-voter guidance; and (3)

developed digital graphics to promote awareness of the unlawful student-voter guidance and potential registration denial.  But for Defendants' conduct, NAACP Virginia State Conference would not have taken these actions.  In other words, because some of its efforts to register voters have been wasted, and because the NAACP Virginia State Conference must expend additional resources to register and turn out college voters, Defendants' unlawful rejection practices have caused the NAACP Virginia State Conference pecuniary harm and partially thwarted the NAACP Virginia State Conference's institutional mission.  Altogether, and on information and belief, Defendants' actions have and will continue to impact the NAACP Virginia State Conference's members and constituents

16.     Defendants John O'Bannon, Rosalyn Dance, Georgia Alvis-Long, Christopher Stolle, and J. Chapman Petersen are members of the Virginia State Board of Elections ("State Board"), located in Richmond, Virginia.  The State Board is mandated to "supervise and coordinate the work of the county and city electoral boards and of the registrars to obtain uniformity in their practices." Va. Code § 24.2-103(A).  It is the duty of the State Board to "make rules and regulations and issue instructions and provide information consistent with the election laws to the electoral boards and registrars to promote the proper administration of election laws." *Id*.  The State Board also supervises the Commissioner of Elections for the Virginia Department of Elections, who is responsible for "compliance with state and federal election laws and regulations" and is designated under federal law as Virginia's "chief elections officer" responsible for coordination of the state's responsibilities under the National Voter Registration Act.  *Id.* § 24.2-102.  As part of its duties, the State Board prescribes the appropriate forms and records for the registration of voters which are used throughout the Commonwealth.  *Id.* § 24.2-105.  The State Board also has the authority to "institute proceedings" "for the removal of any member of an electoral board or general

registrar" who fails to comply with their legal duties.   *Id.* § 24.2-109(A).   Defendants O'Bannon, Dance, Alvis-Long, Stolle, and Petersen are being sued in their official capacities.

17.     Defendant Steve Koski is the Commissioner of Elections for the Virginia Department of Elections ("ELECT"), also located in Richmond, Virginia.   Defendant Koski is the principal administrative officer of ELECT.   *Id.* § 24.2-102.   In this capacity, he is "responsible for managing the day-to-day operations at the Department of Elections" and for "compliance with state and federal election laws."   *Id.* § 24.2-102(H). ELECT puts out the August 2025 Handbook as well as information on its website describing what address-related information Virginia college students must provide on their voter registration applications.   Under federal law, Defendant Koski is designated as Virginia's "chief election officer" and is responsible for the coordination of state responsibilities under the National Voter Registration Act. *Id*. § 24.2-404.1.  Defendant Koski carries out the statutory responsibilities of the State Board.   Defendant Koski is being sued in his official capacity.

18.     Defendants Sandra Price Stroble, Jane Grant Burnder, and Ramona Sanders serve as members of the City of Harrisonburg Electoral Board ("Harrisonburg Board" and, with Defendant Finks, "City of Harrisonburg Defendants").   The Harrisonburg Board administers elections for the City of Harrisonburg and is constituted pursuant to Virginia law.   It is responsible for the appointment and the removal of the General Registrar for the City of Harrisonburg. The Harrisonburg Board's duties include the preparation of ballots, the administration of absentee ballot provisions, the conduct of the election and ascertaining the result of the elections.  Va. Code § 24.2-109.  Defendants Stroble, Burner, and Sanders are being sued in their official capacities.

19.     Defendant Mark Finks is the current General Registrar and Director of Elections for the City of Harrisonburg.  Among other duties, Defendant Finks is responsible for determining

whether a voter registration applicant is qualified to vote and for notifying denied voter registration applicants with the reason for the denial in writing.   Va. Code § 24.2-114.   Defendant Finks is being sued in his official capacity.

20.     Defendants Caroline Emmons, Dorothy Jaeckle, and Lynette Clements serve as members of the Chesterfield County Electoral Board ("Chesterfield Board" and, with Defendant Vera, "Chesterfield County Defendants").   The Chesterfield Board administers elections for Chesterfield County and is constituted pursuant to Virginia law.  The Chesterfield Board's duties include the preparation of ballots, the administration of absentee ballot provisions, the conduct of the election and ascertaining the result of the elections.   Defendants Emmons, Jaeckle, and Clements are being sued in their official capacities.

21.     Defendant Missy Vera is the General Registrar and Director of Elections for Chesterfield County.  Among other duties, Defendant Vera is responsible for determining whether a voter registration applicant is qualified to vote and for notifying denied voter registration applicants with the reason for the denial in writing.  Va. Code § 24.2-114.  Defendant Vera is being sued in her official capacity.

22.     Defendants Atoy Carrington, Michael J. Khandelwal, and H. Michael Ziegenfuss serve as members of the City of Norfolk Electoral Board ("Norfolk Board" and, with Defendant Iles, "City of Norfolk Defendants").   The Norfolk Board administers elections for the City of Norfolk and is constituted pursuant to Virginia law. The Norfolk Board's duties include the preparation of ballots, the administration of absentee ballot provisions, the conduct of the election and ascertaining the result of the elections.  Defendants Carrington, Khandelwal, and Ziegenfuss are being sued in their official capacities.

23.     Defendant Stephanie Iles is the General Registrar and Director of Elections for the City of Norfolk.  Among other duties, Defendant Iles is responsible for determining whether a voter registration applicant is qualified to vote and for notifying denied voter registration applicants with the reason for the denial in writing. Va. Code § 24.2-114.  Defendant Iles is being sued in her official capacity.

24.     Defendants C. Starlet Stevens, Bill Pantele, and Joyce Smith serve as members of the City of Richmond Electoral Board ("Norfolk Board" and, with Defendant Levine, "City of Richmond Defendants").  The Richmond Board administers elections for the City of Richmond and is constituted pursuant to Virginia law.  The Richmond Board's duties include the preparation of ballots, the administration of absentee ballot provisions, the conduct of the election and ascertaining the result of the elections.  Defendants Stevens, Pantele, and Smith are being sued in their official capacities.

25.     Defendant David Levine is the General Registrar and Director of Elections for the City of Richmond.  Among other duties, Defendant Levine is responsible for determining whether a voter registration applicant is qualified to vote and for notifying denied voter registration applicants with the reason for the denial in writing.  Va. Code § 24.2-114.  Defendant Levine is being sued in his official capacity.

## FACTUAL ALLEGATIONS

### A.  Voter Registration Qualifications and Methods in Virginia

26.     To be qualified to register to vote under the Virginia Constitution, one must be a citizen of the United States; eighteen years of age; be a resident of Virginia and of the precinct where they vote; not have been convicted of a disqualifying felony or, if so, have had their rights

restored; and not have been adjudicated mentally incompetent.  *See* Va. Const. Art. II, § 1; *see also* Va. Code §§ 24.2-101, 24.2 -400.

27.     Pursuant to Article II, § 1 of the Constitution of Virginia, "each voter shall be a resident of the Commonwealth and of the precinct where he votes," with residence requiring "both domicile and a place of abode." A "place of abode" is defined in the Virginia Code and the Administrative Code as the "physical place where a person dwells."

28.     Virginians are required to provide a residential address when they register to vote.

29.     The Virginia Administrative Code (VAC) provides that "[r]esidency shall be broadly construed to provide the greatest opportunity to register and to vote." 1 VAC 20-40-30(A).

30.     The VAC further provides that "[n]o presumption in favor of or against residence may arise merely on the basis of a person's presence or absence in" a variety of circumstances.  1 VAC 20-40-30(B). "Residing in any housing commonly occupied by students" is one such category, alongside others including military service on behalf of the United States or Virginia and being confined to "a nursing home, hospital, rehabilitation or short term care facility, retirement or veterans' home."  *Id*.

31.     The VAC provides that "if a person resides in an area lacking a specific mailing address, the general registrar shall ask him to provide a mailing address along with a description indicating where the person resides.  However, **no person shall be denied registration for failure to submit a mailing address.**" 1 VAC 20-40-30(C) (emphasis added).

32.     The voter registration deadline for Virginia primary and general elections is 11 days before Election Day.  Virginians must register to vote before this deadline to vote a regular ballot in person during early voting or at the polling location on Election Day or to apply for and vote by mail.

33.    A voter who is not registered by the registration deadline may still vote using Virginia's same day registration process during early voting and in person on Election Day.  Under the same day voter registration process, the voter fills out a form with the same information as the voter registration application and then is provided a provisional ballot. The provisional ballot will be counted if the information on the voter registration application is approved by the registrar and is otherwise complete.  Va. Code § 24.2-420.1.

**B. State Defendants' Procedures and Guidance on Registration Applications Submitted by College Students Living on Campus**

34.    The State Board Defendants (John O'Bannon, Rosalyn Dance, Georgia Alvis-Long, Christopher Stolle, and J. Chapman Petersen), through the Department of Elections, "supervise and coordinate the work of the county and city electoral boards and of the [county and city] registrars to obtain uniformity in their practices and proceedings and legality and purity in all elections." Va. Code. § 24.2-103(A).

35.    The State Board Defendants must  also "ensure that the members of the electoral boards are properly trained to carry out their duties . . . ." *Id.* 25.2-103(B).

36.    The State Board Defendants have general supervisory authority over the county and city electoral boards, with the authority to "institute proceedings . . . for the removal of any member of an electoral board or general registrar" who violates state or federal election law. *See id.* 25.2-103(E).

37.    The State Board has promulgated rules and regulations for determining a person's residence. *See*, *e.g.*, 1 VAC 20-40-30(A), 20-40-30(B)(3).

38.    The State Board has also promulgated 1 VAC  20-40-40(C), which provides that, in certain situations where the application contains all the information required by law but certain address-related circumstances are present, the local general registrar shall not deny the application

and must request in writing that the applicant provide additional information in support of the application. The regulation further provides that only if the local general registrar is unable to determine the applicant's residency from the applicant or through any other means, shall the registrar deny the application.

39.    Consistent with its statutory role, State Board Defendants prescribe and approve the standard forms for voter registration and elections, and supervise, coordinate, and adopt regulations governing the work of local electoral boards, registrars, and officers of election. Va. Code § 24.2-418.

40.    Pursuant to Virginia law, a voter must provide their residential address on their voter registration application. On Virginia's voter registration application,[1] no specific instructions are provided for college students in filling out the address field:



41.    Neither the Virginia voter registration form nor the federal voter registration form include any instructions informing students that they must provide their dormitory name, dorm room, campus mailing address, and/or mail box number on the residence address section of the

---

[1] Accessible on State Board website at https://www.elections.virginia.gov/registration/how-to-register and also at https://www.elections.virginia.gov/registration/voter-forms.

form to avoid having their application rejected.[2]  Nor is there a space designated or reserved for such information in the forms.

42.     To the contrary, the application expressly provides what information is required: "Starred (*) items are required. If you do not complete all of the items that are marked with *, your application may be denied (*See instructions on reverse side*)."  As to addresses, the reverse side of the application provides only: "You must provide a street address or a description of where you live as a residence address. As required by the Code of Virginia, you may provide a mailing address in Box 4 if: (1) your residence address cannot receive mail; (2) you are homeless; (3) you are an overseas citizen; or (4) you are a uniformed service member, or qualifying spouse or dependent. Qualified protected voters must provide a Virginia post office box in Box 4 to receive protected voter status. No other applicant can list a mailing address."  In short, the application on its face does not indicate that a dormitory name, dorm room number, or other information particular to a college/university campus is required.

43.     Under the Virginia Administrative Code, the test for determining residency is whether the registrar can ascertain the physical residence of the voter only to the extent necessary to "allow the general registrar to place the [residence] in a defined precinct."  *See* 1 VAC 20-40-40(C) (further instructing registrars that they may deny registrations only when they are "unable to determine the applicant's residency through any other means").

44.     Chapter 6 of ELECT's August 2025 Handbook, which is an authoritative source of election information for Virginia election officials on various topics including voter registration,

---

[2] *See* form linked and online voter registration form on defendant State Board website at https://www.elections.virginia.gov/registration/how-to-register; *see also* U.S. Election Assistance Commission, *Register to Vote in Your State by Using This Postcard Form and Guide*, https://www.eac.gov/sites/default/files/eac_assets/1/6/Federal_Voter_Registration_ENG.pdf

provides that "[c]ollege students living on campus should list their dorm address as their residential address to ensure accurate registration and precinct assignment."  Exhibit 1 at 9.[3]

45.     ELECT's website (and, together with the 2025 Handbook, "ELECT Guidance") provides information for college students interested in registering to vote. ELECT's website specifically states that: "A dormitory or college address can be an acceptable residential address and does not disqualify you from voting.  If your local voter registration office is unable to determine your physical residency based on a college address you provided on your voter registration application, the local voter registration office will contact you to request further information needed to register you to vote."[4]



46.     This online guidance does not explicitly instruct students that they must provide their dormitory name, dorm number, campus mailing address, and/or mail box number on their

---

[3] The full Handbook is available at:
https://www.elections.virginia.gov/media/grebhandbook/2025-updates/6_Voter_-Registration_2025_en.pdf (last accessed Jan. 22, 2026).

[4] Virginia Department of Elections: College Student Info, *available at* https://www.elections.virginia.gov/registration/college-student-info/ (last accessed Jan. 22, 2026).

voter registration application. Indeed, there is no reference whatsoever to dormitory name, dorm number, campus mailing address, or mail box number.

47.     Any guidance that purports to *require* the name of a student's dormitory name, dorm number, campus mailing address, and/or mail box number on their voter registration application would be contrary to law.

48.     At a hearing of the Virginia House Committee on Privileges & Elections on August 18, 2025, former Virginia Commissioner of Election Susan Beals was asked why college student constituents had been reporting that their registration applications were being rejected for address-related deficiencies such as the absence of dorm room information.  She did not deny the truth of the reports.  Instead, Beals attempted to justify such rejections, which are contrary to Virginia Administrative Code and the ELECT Guidance. Beals stated that "it is critical that we have their address, their mail box number.  We can't just have a road address of a building . . . ."[5]  She then proposed that college students should not use same-day registration, as every other Virginia voter has the option to use, but instead should register to vote "when they get to campus"—presumably in August, months before the actual deadline to register.

49.     In fact, the "road address of a building" is legally sufficient.  Under Virginia law, information regarding residence is only necessary to determine a voter's precinct.  *See* 1 VAC 20-40-40(C) (instructing registrars that they may deny registrations only when they are  "unable to determine the applicant's residency").  Therefore, because a person cannot be denied registration "for the failure to submit a mailing address," a student's dorm room or campus mail box number

---

[5] The recording of the August 18, 2025 House Privileges & Election Committee hearing is accessible here: https://virginiageneralassembly.gov/house/committees/commstream.html.

is unnecessary and further conflicts with the purpose set forth at 1 VAC 20-40-30(C): the "determin[ation] of the applicant's residency."

50.     Indeed, for universities that use centralized mail systems, a student's mail box may, in many instances, reside at a different location than the student's residence.

51.     Upon information and belief, Defendants O'Bannon, Dance, Alvis-Long, Stolle, and/or Peterson have directed, approved, condoned, or otherwise ratified these efforts to disenfranchise eligible student voters.

52.     Localities across Virginia, including Defendants, following and aligning their practices with guidance from the Virginia Commissioner of Elections, have rejected student voter registration applications for not including a dormitory name, dorm room number, campus mailing address, and/or mail box number.

### C. Defendants' Rejections of College Students' Valid Voter Registration Applications in Certain Jurisdictions

53.     On information and belief, former Commissioner Beals and Defendant Koski, with the knowledge and/or approval of the State Board Defendants, has (a)  directed that registration applications from college students be rejected unless they provide information beyond their residential address (such as their dormitory name and room number) and/or (b) has failed to prevent local registrars from refusing to register students who fail to provide such extraneous information, and (c) has failed to ensure uniformity in applying this directive uniformly across all Commonwealth jurisdictions.

54.     Local Defendants review voter registration applications to ensure that the required information is complete.

55.     Unlike other local election officials, Local Defendants have rejected and continue to reject student voter registration applications for not including a dormitory name, dorm room

number, or mail box number.

56.    The City of Harrisonburg Defendants have been rejecting voter registration applications completed by James Madison University students who live in residence halls on main campus when they do not include a dormitory name, dorm number, and/or mail box number.  This includes numerous rejections in September and October 2025.  Exhibit 2.

57.    Defendant Finks sends Voter Registration Denial Notification letters to rejected applicants who live in residence halls on main campus, which usually indicate that they failed to "provide a valid residence address."  Exhibit 2.

58.    Defendant Finks emailed a rejection notice to several James Madison University students that said:

> You are ineligible to register to vote for the following reason:
>
> **JMU students living on main campus must use the following address as their residence …**
> **800 S. Main St., JMU Box #_____, "residence hall"**
> **Harrisonburg, VA 22807**
>
> Please re-apply with the above information.

Exhibit 2 (emphasis in original).

59.    The City of Harrisonburg's Voter Registration website provides the following information to James Madison University students who live on campus in a residence hall:

> **JMU**
>
> If you are living on campus in a residence hall (not Grace Street) and want to register on JMU campus then you need to put 800 S Main Street 22807 AND your PMB number on your voter registration form for residence. **You MUST include your JMU PMB #.**

Exhibit 2 (emphasis in original).[6]

60.    All James Madison University students who live in a residence hall on main campus vote in a single precinct at a single polling place, which is located in Godwin Hall.[7]

61.    On some occasions, the City of Harrisonburg Defendants rejected voter registration applications on residency grounds even when students provided the campus address, a dorm name, and a room number.

62.    The City of Richmond Defendants have been rejecting voter registration applications completed by Virginia Commonwealth University and University of Richmond students who live on campus when they do not include a dormitory name, dorm number, campus mailing address, and/or mail box number. This includes numerous rejections in September and October 2025. Exhibit 3.

63.    The City of Richmond Defendants reject any on-campus student voter registration application that is missing specific campus address information. Exhibit 3.

64.    Defendant Levine sent a rejection notice to a Virginia Commonwealth University student that said: "VCU students should provide their dorm address, including apartment or dorm number, as their residence address when registering to vote. Since dorms do not receive mail directly, the mailing center address is used as the mailing address. Providing both addresses helps

---

[6] City of Harrisonburg, Virginia: Voter Registration, *available at* https://www.harrisonburgva.gov/register-to-vote (last accessed Jan. 22, 2026).

[7] Some James Madison University upper-class and transfer students live in recently-built apartments located west of Main Street at 42 Grace Street. Students residing in those buildings must use the 42 Grace Street as their residential address when registering to vote. The Harrisonburg Voter Registration website provides: "If you are a resident of the Apartments on Grace Street, there are special instructions for you. Enter 42 W. Grace Street, Room # _____ Harrisonburg, VA 22801 for your Residence Address line, but also check the second box under #4 and include your mailing address: 800 S. Main Street, Box # G---, Harrisonburg, VA 22807."

ensure the registration is completed successfully." Exhibit 3.

65.     Defendant Levine sent another rejection notice to a VCU student that stated: "VCU students must include both their dorm address with apartment or mail box number and the VCU Mail Center address 207 N Laurel St, Richmond, VA 23220—when registering to vote.  Dorm addresses alone are not sufficient for voter registration." Exhibit 3.

66.     Defendant Levine sent a rejection notice to a University of Richmond student that said: "University of Richmond students must include both their dorm address with apartment or mail box number and the University of Richmond Mail Center address 410 Westhampton Way—when registering to vote.  Dorm addresses alone are not sufficient for voter registration." Exhibit 5.

67.     According to a college student voter guide created by the City of Richmond Office of Elections, the campus address information that a student must provide differs depending on the college they attend.  Exhibit 4.[8]

68.     According to the student voter guide, University of Richmond and Virginia Commonwealth University Students are required to provide their dormitory street address and dorm room number to avoid denial. Virginia Union University students are required to provide only their campus mailing address and dorm room number to avoid denial.  Exhibit 4.

69.     On some occasions, the City of Richmond Defendants rejected voter registration applications on residency grounds even when students provided the campus address, a dorm name, and a room number.

---

[8] City of Richmond Office of Elections, *College Student Voter Guide*, at 3, https://www.rva.gov/sites/default/files/2024-10/Final%20Updated%20College%20Student%20Voter%20Guide_1.pdf (last visited Jan. 22, 2026).

70.    The Chesterfield County Defendants have been rejecting voter registration applications completed by Virginia State University students who live on campus when they do not include a dormitory name and/or dorm room.

71.    Virginia State University students who live in residence halls and dormitories all vote at a single polling place, the VSU Multi-Purpose Center, which is located at 20809 2nd Avenue, Petersburg, VA 23803.

72.    The Chesterfield County Defendants have confirmed that they send rejection notices to students in this situation but they have refused to produce those notices in response to an open records request sent pursuant to the Virginia Freedom of Information Act and the public disclosure provision of the National Voter Registration Act.  Exhibit 5.

73.    Chesterfield County Defendants have produced a report indicating that numerous voter registration applications submitted by Virginia State University students residing on campus have been rejected for the generic category "missing information."  Some of these students' applications were rejected for a failure to provide a dormitory name, dorm room, or mail box number.  Exhibit 5.

74.    The City of Norfolk Defendants have been rejecting voter registration applications completed by Old Dominion University and Norfolk State University students who live on campus when they do not include a dormitory name and/or dorm room number.

75.    Norfolk State University students who live in dormitories on campus all vote in the Chesterfield Precinct at a single polling place, Chesterfield Heights Elementary School, which is located at 2915 Westminster Avenue, Norfolk VA.

76.    The City of Norfolk Defendants have confirmed that they send rejection notices to students in this situation but they have, to date, refused to produce those notices in response to an

open records request sent pursuant to the Virginia Freedom of Information Act and the public disclosure provision of the National Voter Registration Act. Exhibit 6.

77. City of Norfolk Defendants have produced a report indicating that numerous voter registration applications submitted by Old Dominion University and Norfolk State University students residing on campus have been rejected for the generic category "missing information." Some of these students' applications were rejected for a failure to provide a dormitory name, dorm room, or mail box number. Exhibit 6.

78. Local Defendants require on-campus students to submit a new voter registration application after Local Defendants reject an application for failing to provide the specific campus address information required by Defendants or file a petition of appeal in the local circuit court.

79. The Voter Registration Denial Notification letters sent by the City of Harrisonburg and City of Richmond Defendants to impacted college students who are attempting to register to vote provide that the recipient may file a Petition for Appeal with the local Clerk of Circuit Court. The Petition for Appeal must be accompanied by a fee.

80. Students living on campus at James Madison University, Old Dominion University, Norfolk State University, University of Richmond, Virginia Commonwealth University, and Virginia State University who cast provisional ballots using same day registration but do not provide the specific campus address information mandated by Defendants will have both their voter registration applications and their provisional ballots denied.

81. On October 27, 2025, the NAACP Virginia State Conference sent a letter to Defendant Beals and the Virginia Department of Elections. Exhibit 7. The letter warned that denying Virginia college students' otherwise valid voter registration applications due to a failure to provide a dorm name or room number violates federal law and the U.S. Constitution. It

requested that Virginia registrars be instructed not to reject applications solely because the aforementioned information is not included.  Thus far, there has been no response.

### COUNT I
### *Violation of the First and Fourteenth Amendments -  Fundamental Right to Vote*
### (42 U.S.C. § 1983)
### (Against All Defendants)

82.     Plaintiffs re-allege and incorporate by reference every allegation contained in the paragraphs above as if fully set forth herein.

83.     42 U.S.C. § 1983 provides a cause of action, including for declaratory or injunctive relief, against "[e]very person who, under color of any statute, ordinance, regulation, custom or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ."

84.     Defendants' acts and omissions as alleged in this Complaint, which were taken under color of law, impose a severe burden on the fundamental right to vote of student voters living on campus.

85.     The First and Fourteenth Amendments to the United States Constitution protect the right to vote as a fundamental right.  The First Amendment's guarantees of the freedoms of speech and association protect the right to vote and to participate in the political process.  The right to vote is a fundamental constitutional right also protected by both the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

86.     The First and Fourteenth Amendments require that state laws imposing burdens on the right to vote must advance relevant and legitimate state interests that are sufficiently weighty to justify the specific burden imposed. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191

(2008) (Stevens, J., controlling op.). When an individual's right to vote is subject to "severe" restrictions, the state election law must be "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434.

87.    Defendants' unlawful on-campus student voter registration rejections impose discriminatory, arbitrary, and unjustified burdens on students living on campus and only students living on campus.  College students are denied access to the voter rolls and many are sent confusing, sometimes threatening notices indicating, in some instances, that they are not eligible to vote.  Other voters are disenfranchised when the provisional ballots they cast while completing otherwise valid same day voter registration applications are rejected due to a failure to provide a dormitory name, dorm room number, campus mailing address, and/or mail box number.

88.    In conjunction with their statutory duties, each of Defendants engaged in actions or omissions that violated federal law.  Defendant Koski is designated as the Chief Elections Officer for the Commonwealth of Virginia under federal law, is responsible under Virginia law for ensuring "compliance with state and federal election laws." Under the direction of his predecessor, ELECT issued guidance and made statements to the effect that college students must provide a mailing address when registering to vote.  The State Board Defendants are responsible under Virginia law for supervising Defendant Koski, as well as for supervising and coordinating the work of county and city election boards and registrars to obtain uniformity; with regard to requirements by certain local boards and registrars that college students provide dormitory name, dorm number, campus mailing address, and/or mail box number, the State Board failed to "obtain uniformity."  The Local Election Officials are also responsible under Virginia law for complying with federal election law in registering voters in the Commonwealth.

89.    Defendants lack any state interest in rejecting on-campus students' voter registration

applications for failure to provide this information that is sufficient to justify the burden these practices impose on the right to vote.  Rejecting voter registration applications for these reasons violate state regulations.  Moreover, providing a dormitory name, dorm room number, campus mailing address, or campus mail box number is not required to determine residency.  As a result of the acts and omissions of Defendants as alleged herein, Plaintiffs have no adequate remedy under law.  Accordingly, Plaintiffs pray for relief as set forth more fully below.

## COUNT II
### *Arbitrary and Disparate Treatment of Student Voter Registration Applicants*
**Equal Protection Clause of Fourteenth Amendment to U.S. Constitution
(42 U.S.C. §1983)
(Against All Defendants)**

90.     Plaintiffs reallege and incorporate by reference every allegation contained in the paragraphs above as if fully set forth herein.

91.     The U.S. Supreme Court prohibits the arbitrary allocation of the right to vote and prohibits "arbitrary and disparate treatment" either in the "allocation of the franchise" or "the manner of its exercise." *Bush v. Gore,* 531 U.S. 98, 104–06 (2000) (concluding that where "standards for accepting or rejecting contested ballots might vary not only from county to county but indeed within a single county" the state had violated the state's "obligation to avoid arbitrary and disparate treatment of the members of its electorate."). "Having once granted the right to vote on equal terms, the state may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Id.* at 104–05; *see also Griffin v. North Carolina State Board of Elections,* 781 F. Supp.3d 411 430-431 (E.D.N.C. 2025) ("Disparate treatment between similarly situated voters, based solely on their casting of ballots in different counties amounts to a constitutional violation of the Equal Protection Clause."); *Wise v. Circosta,* 978 F.3d 93, 100 (4th

Cir. 2020) (reiterating *Bush v. Gore* rule that state election officials may not arbitrarily "apply[] different rules to different voters.")

92.    The bedrock principle that arbitrary treatment of voters violates principles of equal protection is well-established. *See*, *e.g.*, *Dunn v. Blumstein,* 405 U.S. 330, 336 (1972) ("[A] citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction."); *Louisiana v. United States,* 380 U.S. 145, 150–53 (1965) ("The cherished right of people in a country like ours to vote cannot be obliterated by the use of laws like this, which leave the voting fate of a citizen to the passing whim or impulse of an individual registrar.").

93.    Defendants' actions requiring students in some jurisdictions—the City of Harrisonburg, Chesterfield County, the City of Norfolk and the City of Richmond—to provide a dormitory name, dorm room number, campus mailing address and/or mail box number as a precondition to registering to vote, without requiring students in other jurisdictions to provide this information when registering to vote, violates this fundamental principle of equal protection.

94.    State Defendants are responsible under state law for ensuring "compliance with state and federal election laws" and to "obtain uniformity."   State Defendants have failed to "obtain uniformity," such that college students in some localities are required to provide information to register to vote that is not required of students in other jurisdictions.   State Defendants have compounded this lack of uniformity among jurisdictions in requirements for student voter registration by failing to ensure that students in all jurisdictions are treated according to a single standard for information required for voter registration, consistent with state law.   As a result of the acts and omissions of Defendants, as alleged herein, Plaintiffs have no adequate remedy under law.  Accordingly, Plaintiffs pray for the relief as set forth more fully below.

## COUNT III
### *Violation of the Materiality Provision of the Civil Rights Act*
### **(52 U.S.C. § 10101(A)(2)(B), 42 U.S.C. § 1983)**
### **(Against All Defendants)**

95.    Plaintiffs re-allege and incorporate by reference every allegation contained in the paragraphs above as if fully set forth herein.

96.    The Materiality Provision of the Civil Rights Act prohibits disqualifying voters "because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B) (formerly codified at 42 U.S.C.§ 1971).

97.    The Materiality Provision prohibits the conduct challenged here: denying voters the right to register to vote based on the failure to provide immaterial information on their voter registration form.

98.    In enacting the Civil Rights Act, Congress abrogated state sovereign immunity pursuant its power under to the Fourteenth and Fifteenth Amendments. *See, e.g., United States v. Mississippi*, 380 U.S. 128 (1965). *See generally South Carolina v. Katzenbach*, 383 U.S. 301 (1966).

99.    In Virginia, state law establishes the qualifications needed to register to vote. *See* Va. Const. art. II,§ 1. In particular, a voter must be at least 18 years old, be a U.S. citizen, reside in Virginia and the election district where they vote, have not been declared mentally incompetent and, if previously convicted of a felony, have had their rights restored.

100.    Defendants have denied college students the right to register to vote because of the failure to include immaterial information such as their dormitory name, dorm room number, campus mailing address, and/or mail box number. None of those pieces of information have any bearing on whether a voter meets the age, residency, or citizenship and felony restoration of rights

qualifications necessary to vote under Virginia law.  *See* 52 U.S.C. § 10101(a)(2)(B).

101.    Virginia voter registration applications neither mention nor ask applicants to provide a dormitory name or room number.  Moreover, under the Virginia Administrative Code provides that "no person shall be denied registration for failure to submit a mailing address."

102.    There is a private right of action to enforce the Materiality Provision. *See Vote.Org v. Callanen*, 89 F.4th 459 (5th Cir. 2023); *Schwier v. Cox*, 350 F.3d 1284 (11th Cir. 2003); *Mi Familia Vota v. Fontes,* 719 F. Supp. 3d 929, 990-993 (D. Ariz. 2024) 129 F.4th 691 (9th Cir. 2025).

103.    As a result of the acts and omissions of Defendants as alleged herein, Plaintiffs have no adequate remedy under law.  Accordingly, Plaintiffs pray for relief as set forth more fully below.

### COUNT IV
### *Violation of the Different Standards, Practices, or Procedures Provision of the Civil Rights* Act
### (52 U.S.C. § 10101(a)(2)(A), 42 U.S.C. §1983)
### (Against Local Defendants)

104.    Plaintiffs reallege and incorporate by reference every allegation contained in the paragraphs above as if fully set forth herein.

105.    Title I of the 1964 Civil Rights Act, which was enacted to combat discriminator and arbitrary voter registration procedures, provides that:

> No person acting under color of law shall – (A) in determining whether any individual is qualified under State law or laws to vote in any election, apply any standard, practice or procedure different from the standards, practices, or procedures applied under such law or laws to other individuals within the same county, parish or similar political subdivision who have been found by State officials to be qualified to vote[.]

52 U.S.C. §10101(a)(2)(A).

106.    The different standards, practices, or procedures ("DSPP") provision of the Civil Rights Act bars the conduct by Local Defendants challenged herein.

107.    Local Defendants are denying students' otherwise valid registrations for failure to provide a dormitory name, dorm room number, campus mailing address and/or mail box number when a mailing address is not required of voters who are not students.  *See* 1 VAC § 20-40-30(C) ("no person shall be denied registration for failure to submit a mailing address.").

108.    In enacting the Civil Rights Act, Congress abrogated state sovereign immunity pursuant to its power under the Fourteenth and Fifteenth Amendments.  *See, e.g., United States v. Mississippi*, 380 U.S. 128 (1965); *South Carolina v. Katzenbach*, 383 U.S. 301 (1966).

109.    There is a private right of action to enforce the DSPP provision of the Civil Rights Act. *Mi Familia Vota,* 719 F. Supp. 3d at 991-993.

110.    As a result of the acts and omissions of Defendants, as alleged herein, Plaintiffs have no adequate remedy under law.  Accordingly, Plaintiffs pray for the relief as set forth more fully below.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully pray that the Court:

A.  Enter judgment in favor of Plaintiffs and against Defendants on the claims for relief as alleged in this Complaint;

B.  Declare that Local Defendants' rejection of voter registration applications from college students for failing to include either the dormitory/residence hall name, room number, campus mailing address, or mail box number on voter registration applications violates the fundamental right to vote under the First and Fourteenth Amendments to the United States Constitution;

C.  Declare that Local Defendants' rejection of voter registration applications from college students for failing to include either the dormitory/residence hall name, room number,

campus mailing address, or mail box number on voter registration applications violates the Materiality Provision of the Civil Rights Act of 1964 because such information is not material in determining the voter's qualification to vote;

D.  Grant Plaintiffs permanent injunctive relief by ordering that:

    i.  Local Defendants cease rejecting voter registration applications from college students due to a failure to provide a dormitory/residence hall name, room number, campus mailing address, or mail box number;

    ii.  Local Defendants accept otherwise valid voter registration applications from students who provide an on-campus university address unless defendants have affirmative evidence that the student does not live on campus;

    iii.  Local and State Defendants take all reasonable steps to provide notice to Virginia college and university students of the relief ordered herein, including, without limitation, individually contacting all students by phone, in-person, or through email where the applicant included a personal email address in the voter registration application, as well as through press releases to the media, and on Defendants' elections websites; and

    iv.  Local Defendants accept otherwise valid same day voter registration applications submitted by students, and count the associated provisional ballots, if the applications include students' on-campus address, even if the dormitory name, dorm room number, campus mailing address, or mail box number is missing; and

    v.  State Defendants issue guidance or otherwise inform Virginia registrars that they must cease rejecting voter registration applications from college students due to a failure to provide a dormitory/residence hall name, room number, campus mailing address, or

mail box number; and that they must accept otherwise valid voter registration applications from students who provide an on-campus university address unless registrars have affirmative evidence that the student does not live on campus.

E.    Award Plaintiffs their reasonable attorneys' fees and costs pursuant to statute;

F.    Retain jurisdiction over this matter until all Defendants have complied with all orders and mandates of this Court; and

G.    Grant Plaintiffs such other and further relief as may be just and equitable.


Dated: January 26, 2026                    Respectfully submitted,

By: /s/ Murad S. Hussain
Ian S. Hoffman (VSB 75002)
Murad S. Hussain (VSB 96830)
John A. Freedman*
Jeremy Karpatkin*
L. Charles Landgraf*
Samuel D. Kleinman*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW.
Washington, DC 20001
(202) 942-5000
murad.hussain@arnoldporter.com
ian.hoffman@arnoldporter.com
john.freedman@arnoldporter.com
jeremy.karpatkin@arnoldporter.com
charles.landgraf@arnoldporter.com
sam.kleinman@arnoldporter.com

John Powers*
Hani Mirza*
ADVANCEMENT PROJECT
1220 L Street Northwest, Suite 850
Washington, D.C. 20005
(202) 728-9557
jpowers@advancementproject.org
hmirza@advancementproject.org

*Admitted *pro hac vice*